**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2891-21

ANGEL MENDEZ,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

        Argued January 22, 2024 – Decided February 2, 2024

        Before Judges Marczyk and Vinci.

        On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx3001.

        Herbert J. Stayton, Jr. argued the cause for appellant (Stayton Law, LLC, attorneys; Herbert J. Stayton, Jr., on the brief).

        Juliana C. DeAngelis, Legal Counsel, argued the cause for respondent (Nels J. Lauritzen, Deputy Director of Legal Affairs, attorney; Juliana C. DeAngelis, on the brief).

PER CURIAM

Petitioner Angel Mendez appeals from the April 13, 2022 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System (the "Board") denying his claim for accidental disability retirement benefits under N.J.S.A. 43:16:A-7(1). Based on our review of the record and the applicable principles of law, we affirm.

Mendez was employed as a firefighter by the Camden City Fire Department beginning in April 2006. According to Mendez, on March 25, 2017, while responding to a fire, he injured his left shoulder while unloading or "stretching" a four-inch supply line from the fire truck "going towards the [fire] hydrant" to connect the supply line to the hydrant. Mendez testified "as [he] was stretching [the supply line he] got jerked back and as [he] got jerked back [his] left arm went back and [he] felt a sharp pain on [his] left arm . . . ."

When asked what caused him to be jerked back, Mendez responded, "[a]pparently a lump sum of the four[-]inch supply line that was sitting on the hose bed came down on the section I was stretching causing it to get jammed . . . ." Mendez "guess[ed] one of the couplings got caught or something." He "believe[d] . . . [the supply line] must[have] been stored incorrectly." Mendez testified it was unusual for a hose to be stored incorrectly.

A-2891-21

According to Mendez, when a hose is stored correctly it comes out one layer at a time, and it was unusual for "a large pile of hose to come down like that."

After returning to the fire station on the day of the incident, Mendez completed and signed an injury report in which he stated, "[firefighter] hurt his left shoulder while repacking [four-inch] hose." In the supervisor's report section of the injury report, the fire captain wrote, "[t]he firefighter stated that while repacking the [four-inch] hose he felt and heard something pop in his left shoulder."

Mendez received three months of formal firefighter training before assuming his position and received additional training every work shift. He was trained on "[l]oading hose beds, unloading hose beds, hooking up hydrants," and "[s]tretching hose lines." In his years as a firefighter, he responded to "hundreds" of fires.

On May 30, 2018, Mendez filed an application for accidental disability retirement benefits. The disability comments section of the application states, "[a]s a result of attempting to remove a [four-]inch supply line that was improperly stored on the hose bed I suffered a severe shoulder injury." On October 19, 2018, Mendez underwent a medical disability examination. The "description of accident" section of the disability evaluation report prepared

following that examination states, "[m]ember was repacking a [four-inch] hose and felt a pop in his left shoulder."

On December 11, 2018, the Board denied his application and awarded ordinary disability benefits because "the event that caused [his] disability [was] not undesigned and unexpected." The Board also determined Mendez was totally and permanently disabled as a direct result of the March 25, 2017, incident.

After Mendez contested the Board's denial, a hearing was conducted in the Office of Administrative Law. Mendez was the only witness who testified. Following the hearing, the Administrative Law Judge ("ALJ") affirmed the Board's decision in a written decision. The ALJ found "the facts are unclear as to what happened on March 25, 2017." The ALJ determined Mendez's testimony was not convincing and noted "he himself did not appear convinced" of what happened because "he could not articulate what occurred on that date." The ALJ specifically recounted Mendez testified "'apparently' the accident was caused by a 'lump sum of the . . . supply line,' he 'guess[ed]' one of the couplings got caught or something, and he 'believe[d]' there was a lump sum of hose." The ALJ also found Mendez's testimony was inconsistent with the injury report he signed on the day of the incident and the October 19, 2018, disability evaluation report,

4

both of which state Mendez was injured while "repacking" the hose, not "stretching" it from the truck.

The ALJ found Mendez "was the only person who was unloading the hose, and he [was] uncertain what occurred." The ALJ determined there was "no evidence of" a traumatic event that was undesigned and unexpected. The ALJ concluded Mendez "did not particularize what occurred and [did] not [meet] his burden of presenting sufficient competent and credible evidence of facts essential to his claim[]" and "[did] not [meet] the burden of proving . . . eligibility for accidental disability retirement [benefits] by a fair preponderance of the evidence."

Mendez filed exceptions to the ALJ's decision with the Board. After considering those exceptions, the Board adopted the ALJ's decision and affirmed the denial of Mendez's application. This appeal followed.

On appeal, Mendez argues he proved by a preponderance of the evidence he is entitled to accidental disability retirement benefits because the event that caused his disability was undesigned and unexpected, and the Board's decision was arbitrary, capricious, and unreasonable. Mendez also argues pension statutes are remedial and should be liberally construed in favor of the employee.

A-2891-21

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Worthington v. Fauver, 88 N.J. 183, 204-05 (1982) (alteration in original) (quoting Bayshore Sewerage Co. v. Dep't Env't Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)).

In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the

 A-2891-21

"agency clearly erred in reaching [its'] conclusion." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

In Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007), the Supreme Court clarified the meaning of the term "traumatic event" under N.J.S.A. 43:16A-7(1). A claimant for accidental disability benefits must establish:

> (1) that he is permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>     a. identifiable as to time and place,
>     b. undesigned and unexpected, and
>     c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> (3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> (4) that the disability was not the result of the member's willful negligence; and
>
> (5) that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [Id. at 212-13.]

Under N.J.S.A. 43:16A-7(1), a member applying for accidental disability must prove the event was "undesigned and unexpected." Ibid. As the Court explained in Richardson, "[t]he polestar of the inquiry is whether, during the

7

regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214. "Undesigned and unexpected" requires "an unanticipated consequence " that "is extraordinary or unusual in common experience." Id. at 201. The evaluation of the event is not based on results but instead on what the injured person was doing at the time. Russo, 206 N.J. at 18.

Although pension statutes are "remedial in character" and "should be liberally construed and administered in favor of the persons intended to be benefited thereby," Geller v. Dep't of Treasury, 53 N.J. 591, 597-98 (1969), "eligibility is not to be liberally permitted," Smith v. State, Dep't of Treasury, 390 N.J. Super. 209, 213 (App. Div. 2007).

After considering all the evidence presented and the applicable legal standards, the ALJ determined Mendez failed to prove by a preponderance of the evidence his disability was caused by an undesigned and unexpected event. The ALJ specifically noted Mendez was not able to convincingly articulate how he was injured and "did not particularize what occurred." The ALJ also found his testimony was inconsistent with the contemporaneous injury report he completed on the day of the incident as well as the report of his disability

evaluation. The ALJ's decision was based on ample findings supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable. We discern no basis to disturb the Board's decision adopting the ALJ's findings and denying Mendez's application for accidental disability retirement benefits.

To the extent we have not otherwise addressed appellant's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2891-21